**United States District Court**
For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3    TOMAS LOPEZ MENEWEATHER,            )    No. C 07-04204 SBA (PR)
                                         )
4         Plaintiff,                     )    **ORDER DISMISSING SUPERVISORY**
                                         )    **LIABILITY CLAIMS AND GRANTING**
5     v.                                 )    **DEFENDANTS' MOTION FOR**
                                         )    **SUMMARY JUDGMENT**
6    B. POWELL, et al.,                  )
                                         )
7         Defendants.                    )    (Docket no. 29)
     _____)

8

9                          **INTRODUCTION**

10        On August 16, 2007, Plaintiff, a state prisoner, filed a civil rights complaint pursuant to 42

11   U.S.C. § 1983 against prison officials at Salinas Valley State Prison (SVSP) based on a deprivation

12   of sanitation during an aggregate period spanning nearly a year during which he was housed in the

13   Administrative Segregation Unit (ASU).  On March 31, 2008, Plaintiff filed an amended complaint,

14   which is the operative complaint in this action, asserting an Eighth Amendment claim of deliberate

15   indifference to his health and safety.  Plaintiff seeks damages.

16        On October 3, 2008, the Court found cognizable Plaintiff's Eighth Amendment deliberate

17   indifference claim against Defendants SVSP Correctional Officers B. Powell, D. Ferry, T. G. Miller,

18   G. Bailey, A. Meyers, J. Ippolito, R. Reyes, and T. Rincon, as well as SVSP Licensed Vocational

19   Nurse O'Kelly.  (Oct. 3, 2008 Order at 4.)  The Court directed Defendants to file an answer and a

20   motion for summary judgment or other dispositive motion.

21        On March 31, 2008, Plaintiff filed a motion to amend the complaint to add supervisory

22   liability claims.  On December 11, 2008, the Court granted Plaintiff's motion and dismissed the

23   supervisory liability claims with leave to amend.  The Court gave Plaintiff until January 12, 2009 to

24   file his amended supervisory liability claims in a "Second Amendment to the Complaint."  He was

25   informed that the failure to do so would result in the dismissal of his supervisory liability claims

26   without prejudice.  The January 12, 2009 deadline has passed, and Plaintiff did not file a "Second

27   Amendment to the Complaint."  Because Plaintiff has failed to file amended supervisory liability

28   claims against Defendants K. Nuckles, R. Boccella, and G. Neotti, the Court DISMISSES Plaintiff's

     claims against them without prejudice.

United States District Court
For the Northern District of California

1    On February 11, 2009, Defendants Powell, Ferry, Miller, Bailey, Meyers, Ippolito, Reyes,

2   Rincon, and O'Kelly answered the amended complaint and moved for summary judgment.  Plaintiff

3   filed an opposition and a declaration in support thereof.[1]  Defendants filed a reply, and Plaintiff filed

4   a response to their reply.  For the reasons discussed below, the Court GRANTS Defendants' motion

5   for summary judgment.

6                                    **FACTUAL BACKGROUND**

7    Plaintiff has been, at all times relevant to this action, an inmate housed at SVSP.  The

8   complaint stems from two periods during which he was housed in the Enhanced Outpatient Program

9   (EOP) of the ASU, for a total of eleven months, nine days.  The first period began when he entered

10   the ASU on July 18, 2006 and ended on December 21, 2006, when he was released from the ASU.

11   The second period was from January 6, 2007 to July 12, 2007, when he was rehoused in the ASU.

12   (Mot. for Summ. J. at 3; Am. Compl. at A2.[2])

13   **I.    Plaintiff's Version**

14    Plaintiff is wheelchair-bound and suffers from partial paralysis due to a stroke in 2002.  (Am.

15   Compl. at 3.)  He is a disabled inmate under the Americans with Disabilities Act (ADA) (Opp'n at

16   7), and alleges that he is unable to clean his own cell (Am. Compl. at 3).  While in the general

17   population, Plaintiff participates in the Inmate Assistance Program (IAP), whereby a paid inmate is

18   assigned to help him with his daily tasks, including cleaning his cell.  (Am. Compl. at A3; Opp'n at

19   10.)

20    On July 18, 2006, he was placed in the ASU.  (Am. Compl. at A2.)  While he was in the

21   ASU, Plaintiff's tier and his cell were repeatedly flooded with water containing raw sewage from the

22   toilets.  (Opp'n at 3.)  Plaintiff requested an accommodation, namely, staff assistance in cleaning his

23   cell, or his removal to a clean, dry area so that an inmate "porter" could clean his cell.  (Am. Compl.

24   at 3, A1; Pl.'s Resp. to Defs.' Reply at 3.)  Plaintiff alleges that he was never provided assistance in

25   _____

26    [1]  Plaintiff filed a "Brief in Opposition to Defendants' Motion for Summary Judgment," which
    the Court will refer to as his opposition, and  a "Declaration in Opposition to Summary Judgment,"

27   which the Court will refer to as his declaration.

28    [2]  Plaintiff has attached a document entitled, "Exhibit A," to the pre-printed complaint form in
    his amended complaint.  Its pages are not numbered; therefore, the Court has numbered them A1-A10.

                                                  2

**United States District Court**
For the Northern District of California

1   cleaning his cell during this first period of his confinement in the ASU.

2        As a result of Defendants' refusal to assist Plaintiff in having his cell cleaned, his cell

3   remained flooded with "water, waste, and human feces" until the air from the vent dried up the

4   liquid, "[leaving] behind feces and urine encrusted on the floor."  (Am. Compl. at A5; Opp'n at 6.)

5   Furthermore, "every time there was another flood, it simply compounded the problem."  (Id. at 6-7.)

6   "[T]his exposure was for several months, wherein he had to completely live, eat and drink in a filthy,

7   unsanitary cell."  (Id. at 4.)  He states that this flooding happened "numerous" times (am. compl. at

8   3), but does not number or date the episodes with specificity.  He alleges that there were "three prior

9   occasions [he] was forced to live in his cell with at least a[n] inch of water and waste from other

10  inmates['] toilets for as long as five days[.]"  (Id. at A5.)

11       Plaintiff, after requesting assistance cleaning his cell, attempted on September 27, 2006 to

12  speak with Defendant Ippolito about the request, but Defendant Ippolito refused to address him.  (Id.

13  at A5-A6.)  On November 23, 2006 and again on November 27, 2006, Plaintiff asked Defendant

14  O'Kelly, the nurse on duty, to "do a 7219 report on the conditions of [the] cell," but Defendant

15  O'Kelly refused, and "stated that he would not do the report because it could be used against the

16  officers and get them in trouble."[3]  (Id. at A6.)  Plaintiff made "numerous and repeated requests" to

17  each of the named Defendants for help having his cell cleaned.  (Id. at A3.)  Plaintiff claims that

18  Defendants are

19          known to Plaintiff as members of the 'green wall[,]' a rogue gang of prison guards above the
            law[.]  Plaintiff requested to them individually and collectively to clean Plaintiff's cell or
20          move Plaintiff to a dry and clean cell at numerous times over the days, weeks, and months of
            Plaintiff['s] Administrative Segregation confinement and they refused.
21
22  (Id. at 3.)

23       Prison officials offered Plaintiff the option to take on a cellmate who could have assisted

24  Plaintiff in cleaning the cell, but "that person wouldn't have been assigned to render such assistance

25  [and] could have refused to do so[.]"  (Opp'n at 5-6.)  Plaintiff contends that his requests for staff

26  assistance in cleaning his cell were never brought to the attention of medical staff.  (Am. Compl. at

27

28          [3]  The gender of Defendant O'Kelly is unclear to the Court, as this person is referred to by the
        parties as both "he" and "she."  The Court will assume Defendant O'Kelly is a male.

1    A4.)

2    On December 10, 2006, Plaintiff filed a "Reasonable Modification or Accommodation

3    Request" for inmates with disabilities, requesting that his cell be cleaned, cleaned regularly, and that

4    he be released from the ASU and "rehoused where [he] has access to the . . . ADA Inmate Worker's

5    Program." (Id. at A1.) Plaintiff was released from the ASU on December 21, 2006.[4] The request

6    for an accommodation was considered on January 10, 2007, when Defendant Ippolito granted it in

7    part, because the "inmate [was] no longer housed in ASU."[5] (Id. at A2.)

8    Plaintiff filed a 602 inmate appeal on December 10, 2006.[6] (Id. at A3.) In this appeal,

9    Plaintiff alleged that he had made "numerous repeated requests to correctional officers B. Powell, D.

10   Ferry, T. Miller, G. Bailey, A. Meyer, Rincon, and Reyes" for his cell to be cleaned. (Id.)

11   The First Level Appeal Response explained that his cell could be cleaned only after a

12   determination was made by medical staff. (Id. at A4.[7]) Plaintiff then requested a Second Level

13   Review on January 23, 2007, stating that he had been given "no indication of how long it would take

14   to make the [medical] determination[;] this condition existed [for] over five months" and there had

15   been no follow-up referral to medical staff. (Id.)

16   The Second Level Appeal Response, on March 6, 2007, stated that "a thorough examination

17   has been conducted regarding the claim presented . . . . Reasonable accommodations have been

18   made to assist the appellant with maintaining the cleanliness of the cell. In addition, correctional

19

20   ──────────────

21   [4] There is no indication that his release was related to the grievance. (Am. Compl. at A2.)

22   [5] The parties agree that Plaintiff was rehoused in the ASU on January 6, 2007; therefore, Plaintiff was actually returned to the ASU at the time this decision was reached on January 10, 2007. (Mot. for Summ. J. at 3; Am. Compl. at A2.)

23

24   [6] Plaintiff filed his grievance in December, 2006, near the end of his first commitment to the ASU. Records of the administrative grievance decisions are attached to Plaintiff's complaint and amended complaint. As mentioned above, he contends in this action that the deprivation of sanitation

25   of which he was complaining continued unabated through his second commitment in the ASU. The Court finds no evidence that a second grievance was filed, but because neither party raises an exhaustion

26   issue, the Court accepts as true Plaintiff's uncontested assertion that he filed a grievance addressing the claims alleged in the instant action.

27

28   [7] The record does not contain the First Level Appeal Response, but the Court takes these facts from Plaintiff's discussion of the First Level Appeal Response in his request for a Second Level Review. (Am. Compl. at A4.)

4

**United States District Court**
For the Northern District of California

1   staff assigned to the appellant's building will clean the appellant's cell, as needed." (Am. Compl. at

2   A6-A7.) A Director's Level Appeal Decision followed on April 18, 2007, indicating that indeed

3   Plaintiff's cell had been cleaned. Officer Crawford, the control booth officer in Plaintiff's housing

4   unit, stated that "the appellant's cell was cleaned on April 15, 2007, and is continually cleaned every

5   other day." (Id. at A8.) However, Plaintiff states that his appeal was "[d]enied based on false

6   information by prison guard D. Crawford." (Id. at 2.) A fellow inmate, Aron Whiteside, who was

7   housed in the cell next to Plaintiff's cell beginning on March 21, 2007, has submitted a declaration

8   dated May 10, 2007 stating that: "For the (2) two months that I have been in cell D-2-119 I have

9   never once seen an officer clean [Plaintiff's] cell . . . ." (Whiteside Decl. at 1.[8])

10        Plaintiff claims that he experienced the same flooded conditions in his cell during his second

11   period of housing in the ASU from January 6, 2007 to July 12, 2007.

12        As a result of living in this unsanitary environment, Plaintiff suffered terrible colds and

13   caught an "incurable sinus infection" and pneumonia. (Am. Compl. at 3.) At one point, he went to

14   the doctor because of a "cold, stopped [sic] up nose, congestion in [his] chest and lungs, chills,

15   difficulties in breathing and coughing up green mucus[.]" (Id. at A5.) He avers that he had no

16   history of respiratory or sinus problems before his time in the squalid cell. (Opp'n at 3.) He also

17   suffered mental health difficulties as a result of living in this condition. (Pl.'s Statement of Disputed

18   Factual Issues at 4.)

19   **II.   Defendants' Version**

20        It is the responsibility of inmates to keep their cells clean. (Ippolito Decl. ¶ 7.) Other

21   wheelchair-bound inmates in administrative segregation "effectively clean their cells." (Meyer Decl.

22   ¶ 4.) Therefore, it was not readily apparent to Defendants that Plaintiff was unable to clean his cell.

23   (Id.) In the ASU, there is no Inmate Assistance Program or a comparable program, because it is a

24   secured-housing unit. (Ippolito Decl. ¶¶ 3-4.) The proper protocol in the ASU is for prison staff to

25   refer an inmate requesting assistance in cleaning a cell to medical personnel for an assessment of

26   whether or not the inmate needs such assistance. (Ippolito Decl. ¶ 7; Meyer Decl. ¶ 5.) "If the

27

28

---

     [8] Plaintiff has attached the declaration of Inmate Whiteside to his opposition.

United States District Court
For the Northern District of California

1   psychiatric or medical staff determined that the inmate needed help cleaning his cell, the sergeant

2   would then instruct the officers to clean the cell."  (Meyer Decl. ¶ 5.)  "Officers cannot enter and

3   clean an inmate's cell in response to an inmate request."  (Id. ¶ 4.)

4        Defendants claim to have taken two remedial steps in response to Plaintiff's complaints.

5   They allege that they "brought inmate [Plaintiff's] issues regarding his cell cleanliness to medical

6   staff's attention, and [medical staff] informed [them] verbally that he was attempting to manipulate

7   staff.  In other words, medical staff did not determine at that time that [Plaintiff] needed assistance

8   cleaning his cell."[9]  (Ippolito Decl. ¶ 6.)  Defendants also offered Plaintiff the option to take on a

9   cellmate who could have helped him clean the cell, but Plaintiff refused.  (Meyer Decl. ¶ 3.)

10  Defendant Meyer avers that Plaintiff was given this option more than once during his first stay in the

11  ASU.  (Id.)

12       In response to Plaintiff's allegations, Defendants claim that there could not have been an inch

13  of water on the floor of Plaintiff's cell without the entire tier experiencing severe flooding.  (Meyer

14  Decl. ¶ 7.)  Officers "conduct five formal cell counts a day, meaning that they document five

15  inspections per day . . . [and] informally, officers are looking into cell windows, checking on

16  inmates and observing inmates during the officers' entire shift."  (Id.)  Thus, "an inch of water would

17  not go unnoticed."  (Id.)  Staff would have immediately cleared this much water from an inmate's

18  cell, because of "health and safety issues."  (Ippolito Decl. ¶ 8.)  Psychiatric records spanning the

19  entire time that Plaintiff was in the ASU, from July, 2006 to June, 2007, consistently document

20  Plaintiff's hygiene and cell cleanliness as "fair."  (Rivo Decl., Ex. A at AGO 2-5, 7-12, 14-16, 25,

21  27-29, 37-39, 46-48, 51, 57-60, 65, 68, 70, 73, 74.)

22       Defendant Ippolito, in response to the allegation that he refused to speak with Plaintiff on the

23  date in question, states that inmates "are to submit written requests for interviews to speak to a

24  Sergeant."  (Ippolito Decl. ¶ 9.)  Defendant Ippolito claims that he was under no obligation to speak

25  with Plaintiff at that time, and furthermore, it would have been improper for him to do so.  (Id.)

26  _____

27       [9]  It is unclear whether this medical determination took place during Plaintiff's first stay in the
    ASU or during his second stay.  It is also unclear to the Court why -- if medical staff did not determine
28  that Plaintiff needed assistance in cleaning his cell -- the record shows that prison officials claimed, in
    their grievance decisions, to have provided such assistance.  (Am. Compl. at A8.)

United States District Court
For the Northern District of California

1    Defendant O'Kelly, responding to the allegation that he failed to make out a report when

2    requested to do so, states: "I do not normally draft CDCR reports, which are for the benefit of

3    custody staff.  Instead of drafting a 7219, I suggested that inmate Meneweather complete a pink

4    CDCR 602 form for a supervisor to review his disability.  This is a medical form used to document

5    inmates' medical requests."  (O'Kelly Decl. ¶ 4.)

6    With respect to Plaintiff's injury, Defendants allege that there is no documentation in his

7    medical file indicating that he developed either pneumonia or a sinus infection.  Dr. Mack, Acting

8    Chief Physician at SVSP, reviewed Plaintiff's medical records and found that medical examinations

9    during the relevant periods "did not show significant infections."[10]  (Mack Decl. ¶ 4.)  During four

10   medical examinations spanning from December, 2006 through April, 2007, Plaintifff went to see Dr.

11   Mack with complaints of respiratory illness.  According to medical records of these examinations,

12   Plaintiff was diagnosed at one point with "a runny nose" and at another point with "allergic rhinitis,

13   an inflammation or nasal passages[.]"  (Id. ¶ 5.)  Dr. Mack claims that there was "no indication that

14   inmate Meneweather's ailments were caused by an unclean cell."  (Id.)

**DISCUSSION**

15

16   **I.    Standard of Review**

17   Summary judgment is properly granted when no genuine and disputed issues of material fact

18   remain and when, viewing the evidence most favorably to the non-moving party, the movant is

19   clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S.

20   317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

21   The moving party bears the burden of showing that there is no material factual dispute.

22   Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or

23   other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must

24   draw all reasonable inferences in favor of the party against whom summary judgment is sought.

25   Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v.

26   Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be

27

28

_____

[10]  Dr. Mack is not a named defendant in this case.

**United States District Court**
For the Northern District of California

1  used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets

2  forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11

3  (9th Cir. 1995).

4          Material facts which would preclude entry of summary judgment are those which, under

5  applicable substantive law, may affect the outcome of the case.  The substantive law will identify

6  which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

7          Where the moving party will have the burden of proof on an issue at trial, it must

8  affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.

9  But on an issue for which the opposing party will have the burden of proof at trial, the moving party

10  need only point out "that there is an absence of evidence to support the nonmoving party's case."

11  Celotex, 477 U.S. at 323.

12          If the moving party discharges its burden by showing an absence of evidence to support an

13  essential element of a claim or defense, it is not required to produce evidence showing the absence

14  of a material fact on such issues, or to support its motion with evidence negating the non-moving

15  party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME

16  Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991).  If the moving

17  party discharges its burden by negating an essential element of the non-moving party's claim or

18  defense, it must produce affirmative evidence of such negation.  Nissan Fire & Marine Ins. Co. v.

19  Fritz Companies, Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).

20          If the moving party does not meet its initial burden of production by either method, the non-

21  moving party is under no obligation to offer any evidence in support of its opposition.  Id.  This is

22  true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

23          If the moving party does meet its burden of production, the burden then shifts to the opposing

24  party to produce "specific evidence, through affidavits or admissible discovery material, to show that

25  the dispute exists."  Bhan, 929 F.2d at 1409; Nissan, 210 F.3d at 1105.  "[S]elf-serving affidavits are

26  cognizable to establish a genuine issue of material fact so long as they state facts based on personal

27  knowledge and are not too conclusory."  Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir.

28  2001).  However, "[c]onclusory allegations unsupported by factual data cannot defeat summary

8

United States District Court

For the Northern District of California

1  judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003); see also

2  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case,

3  conclusory statement of bias not sufficient to carry nonmoving party's burden).

4      It is not the task of the district court to scour the record in search of a genuine issue of triable

5  fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of

6  identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the

7  nonmoving party fails to do so, the district court may properly grant summary judgment in favor of

8  the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026,

9  1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of

10  material fact, a district court may grant summary judgment if the opposing papers do not include or

11  conveniently refer to that evidence). Although the district court has discretion to consider materials

12  in the court file not referenced in the opposing papers, it need not do so. Id. at 1029. "The district

13  court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031.

14  **II.    Applicable Law**

15      **A.    The Eighth Amendment in the Context of Prison Inmates**

16      The Constitution does not mandate comfortable prisons, but neither does it permit inhumane

17  ones. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison

18  and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.

19  See Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of cruel and unusual

20  punishment, the Eighth Amendment places restraints on prison officials, who may not, for example,

21  use excessive force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The

22  Amendment also imposes duties on these officials, who must provide all prisoners with the basic

23  necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See

24  Farmer, 511 U.S. at 832; DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-

25  200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

26      A prison official violates the Eighth Amendment when these two components are met:

27  (1) the objective component -- the deprivation alleged must be sufficiently serious, see Farmer, 511

28  U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the subjective component --

9

1    the prison official possesses a sufficiently culpable state of mind.  See id. (citing Wilson, 501 U.S. at

2    297).

3         In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the

4    objective component of an Eighth Amendment claim, a court must consider the circumstances,

5    nature, and duration of the deprivation.  The more basic the need, the shorter the time it can be

6    withheld.  See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  Substantial deprivations of

7    shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to

8    satisfy the objective component of an Eighth Amendment claim.  See id. at 732-33.

9         To satisfy the subjective component, the requisite state of mind depends on the nature of the

10   claim.  In prison-conditions cases, the necessary state of mind is one of "deliberate indifference."

11   See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at

12   834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at

13   302-03 (general conditions of confinement).

14        Neither negligence nor gross negligence will constitute deliberate indifference.  See Farmer,

15   511 U.S. at 835-36 & n.4; see also Estelle, 429 U.S. at 106 (establishing that deliberate indifference

16   requires more than negligence).  A prison official cannot be held liable under the Eighth Amendment

17   for denying an inmate humane conditions of confinement unless the standard for criminal

18   recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or

19   safety.  See Farmer, 511 U.S. at 837.  The official must both be aware of facts from which the

20   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

21   inference.  See id.  An Eighth Amendment claimant need not show, however, that a prison official

22   acted or failed to act believing that harm actually would befall an inmate; it is enough that the

23   official acted or failed to act despite his knowledge of a substantial risk of serious harm.  See id. at

24   842.  This is a question of fact.  See id.  A heightened pleading standard applies to the subjective

25   component of Eighth Amendment claims: the plaintiff must make non-conclusory allegations

26   supporting an inference of unlawful intent.  Alfrey v. United States, 276 F.3d 557, 567-68 (9th Cir.

27   2002) (applying standard to Bivens Eighth Amendment claim).

28

10

United States District Court
For the Northern District of California

**B.**     <u>Case Law on Sanitation, Ventilation, and Plumbing</u>

Sanitation is among the basic necessities of life which prison officials have a duty to provide under the Eighth Amendment.  <u>See</u> <u>Farmer</u>, 511 U.S. at 832; <u>DeShaney</u>, 489 U.S. at 199-200; <u>Hoptowit</u>, 682 F.2d at 1246.  "The provision of adequate means of hygiene, and the sanitary disposal of bodily wastes so that the wastes do not contaminate the cells, are constitutionally required." <u>Martino v. Carey</u>, 563 F. Supp. 984, 999 (D.C. Or. 1983) (footnote and citations omitted).  If it is severe or prolonged, a lack of sanitation can constitute an infliction of pain within the meaning of the Eighth Amendment.  <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1314 (9th Cir.), <u>amended</u>, 75 F.3d 448 (9th Cir.), <u>cert. denied</u>, 516 U.S. 916 (1995).

The Ninth Circuit has issued a number of decisions that are instructive with respect to Plaintiff's claims.  In <u>Anderson</u>, the Ninth Circuit considered the temporary emergency detention of suicidal and/or violent inmates in a dirty "safety cell" in which the "pit toilet was encrusted with excrement and urine." 45 F.3d at 1313.  Plaintiffs in that case had been shackled over the pit toilet for periods of "three hours," "all night," and "an hour and a half," respectively.  <u>Id.</u>  The court upheld summary judgment for the defendants, finding that the plaintiffs had not shown "that the sanitary limitations imposed upon them were more than temporary." <u>Id.</u> at 1315.  Though ultimately focusing on the temporary and emergency situation presented, the court noted that, "Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." <u>Id.</u> (citing <u>Gee v. Estes</u>, 829 F.2d 1005, 1006 (10th Cir. 1987)).

In <u>Hoptowit v. Spellman</u>, the Ninth Circuit found that the penitentiary's plumbing was "in such disrepair as to deprive inmates of basic elements of hygiene and seriously threaten their physical and mental well-being[,]" amounting to cruel and unusual punishment under the Eighth Amendment. 753 F.2d 779, 783 (9th Cir. 1985).  The court cited "standing water, flooded toilets and sinks, and dank air" as among the circumstances amounting to "an unnecessary and wanton infliction of pain[.]" <u>Id.</u>  The denial of summary judgment in that case was upheld.  <u>Id.</u>

In <u>Keenan v. Hall</u>, the plaintiff "alleged his cell was 'permeated with Stale air that is Saturated with the Fumes of Feces (thrown by some inmates), the smell of urine and vomit as well as

11

other stale bodily odors.'"  83 F.3d 1083, 1090 (9th Cir. 1996)  The court concluded that "If the air was in fact saturated with the fumes of feces, urine, and vomit, it could undermine health and sanitation."  Therefore, the court allowed plaintiff's ventilation claim to go forward.  Id.

In Johnson, prisoners were held in the prison yard for four days during the investigation of a disturbance.  217 F.3d 726.  They were held prone and handcuffed, day and night, with no protection from temperature extremes, even during a night of rain.  Id. at 729.  For the first night, they were not allowed to get up from the prone position, even to relieve themselves, and as a result had to urinate and defecate into their clothing, which they were then forced to wear for the remainder of the four day period.  Id. at 730.  Thirteen inmates required treatment for heat-induced medical problems.  Id. They were served spoiled food, went without water until the second day, and had insufficient water after that.  Id.  The Ninth Circuit found that the deprivation alleged was "of sufficient magnitude to satisfy the objective prong of an Eighth Amendment claim."  Id. at 732.  The court therefore reversed the district court's grant of summary judgment.  Id. at 735.  The Ninth Circuit classified the four-day deprivation in the case as "relatively brief" and noted that a deprivation of such a brief duration would preclude an Eighth Amendment claim for "minor deprivations."  Id. at 732.

 Hearns v. Terhune dealt with prison yard conditions over a nine month period, during which time Hearns alleged a deprivation of cold drinking water in high heat, the existence of pools of stagnant water infested with insects on the prison yard, and a lack of adequate plumbing.  413 F.3d 1036 (9th Cir. 2005).  The district court had dismissed the case, stating: "'plaintiff simply alleges that the toilets did not work, which presumably means that they did not flush.  Although certainly unpleasant, plaintiff fails to allege that the toilets were completely unusable for a period of time so that, for example, he was left with no alternative than to soil himself.'"  Id. at 1042.  The Ninth Circuit reversed, taking issue with the district court's characterization of the lack of sanitation.  The Ninth Circuit pointed out the extended nine month duration of the deprivation, but declined to reach the sanitation claim on its own: "We need not decide whether the other allegations regarding the condition of the yard would independently, if proved, establish unconstitutional conditions, because with allegations that there was a lack of drinkable water, the complaint is sufficient to state a cause of action."  Id. at 1043.

United States District Court

For the Northern District of California

**III.**   **Analysis**

Defendants present four grounds in support of their summary judgment motion: (1) the deprivation Plaintiff alleges was not sufficiently serious under the objective prong of the <u>Farmer</u> test as to violate the Eighth Amendment; (2) Defendants were not deliberately indifferent to Plaintiff's health and safety needs under the subjective prong of the <u>Farmer</u> test; (3) Plaintiff has failed to show that Defendants were the actual and proximate cause of his suffering; and (4) Defendants are entitled to qualified immunity because it would not have been clear to a reasonable prison official that his/her conduct was unlawful in the situation presented.  (Mot. for Summ. J. at 2.)

   **A.**   **Objective Prong of the Eighth Amendment Claim**

The first prong of the <u>Farmer</u> test for evaluating violations of prisoners' Eighth Amendment rights by prison officials asks whether the alleged deprivation is objectively "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834 (citing <u>Wilson</u>, 501 U.S. at 298).  Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Johnson</u>, 217 F.3d at 731 (internal quotations and citation omitted).  In evaluating the seriousness of a claim, a court is to look at the circumstances, nature, and duration of the deprivation.  <u>Id.</u>  A severe deprivation lasting for four days can be sufficiently serious, while "More modest deprivations can . . . form the objective basis of a violation, but only if such deprivations are lengthy or ongoing." <u>Id.</u> at 732 (citing <u>Keenan</u>, 83 F.3d at 1090-91).  A lack of sanitation that is "severe or prolonged" can rise to the level of an Eighth Amendment violation.  <u>Anderson</u>, 45 F.3d at 1315 (citing <u>Gee</u>, 829 F.2d at 1006).

Here, Defendants contend that the alleged deprivation of having to endure an unsanitary cell is not sufficiently serious to satisfy the objective component of the <u>Farmer</u> analysis.  (Mot. for Summ. J. at 8-11.)  At the summary judgment stage, the Court construes the facts in a light most favorable to the nonmoving party.  Therefore, the Court will analyze the question of whether the deprivation as alleged by Plaintiff could constitute a sufficiently serious deprivation under the objective prong of the <u>Farmer</u> test, considering the nature, circumstances and duration of the

deprivation.  Johnson, 217 F.3d at 731.

Plaintiff alleges that he was forced to live in a cell which contained liquid and dried sewage on the floor, the amount of which varied with recurrent flooding episodes, for two periods of approximately five and a half months each.  There is no indication that Plaintiff was forced to touch the sewage or to sleep in it, nor did it contaminate his food.  Cf., Mccord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991) ("McCord often slept on a bare mattress in filthy water contaminated with human waste rainwater and sewage backed up in cells").  Nonetheless, the smell of sewage, the damp air, and the generally fetid environment permeated Plaintiff's senses and continued unabated except for the air-drying effect for potentially his entire time in the ASU.  These conditions existed inside his cell, as opposed to the deprivation of sanitation on the yard that was considered in Johnson, or the deprivation of sanitation in a temporary holding cell that was considered in Anderson.

Looking at the magnitude of the deprivation on its own, without regard to its duration, the deprivation alleged in this case is less serious than that which occurred in Johnson, where the court reversed the dismissal of the prisoner's claim.  217 F.3d 726, 735.  Here, Plaintiff was allowed to change his clothes, was able to use the toilet to relieve himself, and states no claim that he was denied edible food or water, as occurred in Johnson.  That notwithstanding, the deprivation in Johnson lasted for four days during the investigation of a disturbance in the prison.  In contrast, the deprivation in the present case continued for some eleven months in varying states.  Considering both the severity and duration of the deprivation, the Court finds that the deprivation alleged here is less severe–but more prolonged–than that alleged in Johnson.

Comparing these facts to those in Anderson, where the inmates were chained to the toilet grate, the Court again finds the deprivation here to be less severe because Plaintiff was not chained to the toilet or otherwise chained up in his cell and could move around, even if he could not escape from the sewage.  45 F.3d at 1313.  However, the safety cell at issue in Anderson was for emergency use only and was used for periods of hours for acutely suicidal and/or violent inmates, as compared to the prolonged time frame at issue here.  Considering both severity and duration, the Court finds the deprivation alleged here to be more serious than that which occurred in Anderson, primarily

United States District Court
For the Northern District of California

1    because of the extremely brief confinement of the <u>Anderson</u> plaintiffs in the safety cell, ranging

2    from several hours to one and a half days.  <u>Id.</u> at 1313.  The Ninth Circuit in <u>Anderson</u> upheld the

3    district court's refusal to enjoin the use of the safety cell.  <u>Id.</u> at 1315.

4         In <u>Hearns</u>, the Ninth Circuit reversed a dismissal involving an alleged lack of sanitation and

5    drinking water.  413 F.3d at 1042-43.  While the court did not decide the case based on the sanitation

6    claim, resting its holding on the alleged deprivation of drinking water instead, it did take issue with

7    the district court's minimization of a claim that toilets were not functioning for a nine month period

8    of time.  <u>Hearns</u>, 413 F.3d at 1042-43.  The sewage claim in <u>Hearns</u> was of roughly equal duration as

9    that alleged here, and of a lesser magnitude than the deprivation Plaintiff alleges.  As the district

10   court in <u>Hearns</u> noted, the sewage problem there was confined to the toilet bowl.  <u>Id.</u> at 1042.  It was

11   also the toilets on the exercise yard which were claimed to be non-functioning, not the toilets inside

12   the inmates' cells.  <u>Id.</u> at 1042-43.  In comparison, in the present case Plaintiff alleges a substantial

13   amount of sewage not only in the toilet bowl but on the floor of his cell, which remained there the

14   entire time he was in the cell.

15        The case law also covers situations far more egregious than what Plaintiff has alleged.  In

16   some cases, prisoners were forced to sleep or lie in sewage.  <u>See Mccord</u>, 927 F.2d at 848 (inmates

17   forced to sleep on mattresses soaked in rainwater and sewage in absence of beds); <u>Gee</u>, 829 F.2d

18   1005 (prisoner left lying in excrement while having a seizure); <u>see also Johnson</u>, 217 F.3d 726

19   (prisoners left lying prone and handcuffed in the yard with no opportunity to get up to relieve

20   themselves all night).  Here, the sewage on the floor of Plaintiff's cell, for a period potentially

21   spanning the eleven months that he was in ASU, is more severe than the non-flushing toilets on the

22   yard in <u>Hearns</u>, and is considerably more prolonged than the deprivations considered in <u>Johnson</u> and

23   <u>Anderson</u>.  The Ninth Circuit has recognized claims of flooding, dank air, and air saturated with

24   fumes of bodily wastes as rising to constitutional proportions.  <u>See Hoptowit</u>, 753 F.2d at 783;

25   <u>Keenan</u>, 83 F.3d at 1090.

26        Considering the severity and the duration of the deprivation at issue in the present case–both

27   of which are widely disputed–the Court finds a genuine issue of material fact on the question of

28   whether or not the deprivation alleged could be considered substantially serious.  A jury could

**United States District Court**
For the Northern District of California

reasonably find that there was a substantial amount of fetid water on the floor of Plaintiff's cell for a substantial period of time and that this exposure was sufficiently unhealthy, both physically and mentally, as to impose cruel and unusual punishment.  As a precursor to any evaluation of the unsanitary conditions that existed in Plaintiff's cell, a trier of fact would have to determine whether Plaintiff was able to clean his cell on his own.  However, given that Defendants do not support their claim that medical personnel determined that Plaintiff was able to clean his cell and that the prison officials' grievance decisions indicated that Plaintiff was provided assistance in cleaning his cell by prison staff, then a reasonable jury could find that Plaintiff was unable to clean his cell and required assistance.  Therefore, the Court finds that Plaintiff has raised a triable issue of fact as to the severity of the deprivation he suffered under the objective prong of <u>Farmer</u>.  511 U.S. at 834.

**B.       Subjective Prong of the Eighth Amendment Claim**

The subjective component of an Eighth Amendment violation examines whether the subjective state of mind of the prison officials was sufficiently culpable.  <u>Johnson</u>, 217 F.3d  at 733.  In order to make out a conditions of confinement claim, a prison official must demonstrate deliberate indifference to an inmate's health or safety needs, meaning that the official knows of and disregards an excessive risk to inmate health or safety.  <u>See</u> <u>Farmer</u>, 511 U.S. at 834, 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  <u>See</u> <u>id.</u> at 837.  A trier of fact may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious <u>Foster v. Runnels</u>, 554 F.3d 807, 814 (9th Cir. 2009) ("risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious").

Here, both parties agree that if a significant amount of sewage were on the floor of a cell, prison officials would have been aware of it.  Defendants stress that the frequent safety checks and cell inspections they routinely conducted serve as evidence that no such flooding existed during the time periods Plaintiff alleges.  Defendants are strident in their insistence that the inmates' cell conditions were regularly and frequently inspected.  (Mot. for Summ. J. at 6, 10.)  Plaintiff alleges that Defendants deliberately and willfully ignored his requests for assistance in cleaning his cell.  Plaintiff alleges not only that Defendants failed to assist him and ignored his requests for assistance,

but that they deliberately did so.

Furthermore, the assertion by prison officials in their appeals decisions, purportedly confirmed by the control booth officer, Sergeant Crawford, that prison staff was actually cleaning Plaintiff's cell further indicate that at the very least that prison officials were aware that Plaintiff was complaining of a unsanitary conditions in his cell and acknowledged that he was unable to resolve the problem on his own.  (Id. at A8.)  In light of Plaintiff's allegations of malicious disregard on the part of prison officials, the vigorous monitoring of cell conditions that occurred in the ASU, and the prison appellate record indicating that officials had actually responded to the situation by providing staff assistance, the Court finds that Defendants should have been aware of the unsanitary cell situation Plaintiff faced.

However, mere awareness of the factual situation as it existed does not establish officials' awareness of an "excessive risk to [his] health or safety" or a "substantial risk of serious harm[.]"  Farmer, 511 U.S. at 837, 842.  The risk Plaintiff was exposed to is clearly not of the magnitude of that seen in Farmer (rape and contraction of HIV) or in Johnson (severe deprivation of food, sanitation, and exposure to the elements.)  While an unsanitary cell may have posed obvious hygiene concerns, there is no indication that officials were aware of an excessive risk to Plaintiff's health, or even that there was such a risk.  Cf. Keenan, 83 F.3d at 1090, Hoptowit, 753 F.2d at 783.  Defendants correctly assert that Plaintiff never specifically told them he was at risk of illness, or of a particular illness.  However, Defendants are incorrect in asserting that this level of notice is required.  In Johnson, the officers had knowledge of the plaintiffs' exposure to the elements, not of anyone's particular propensity to suffer from heatstroke.  217 F.3d at 734; see also Farmer, 511 U.S. at 848 (transsexual rape victim did not need to have given officials advance notice that he was at risk of rape; awareness of the risk could be inferred from other evidence).  But even without requiring Plaintiff to have given advance notice of the risk he faced, there is no indication that Defendants' actions amounted to anything more than negligence.  Plaintiff requested assistance in cleaning his cell.  He claims that Defendants failed to provide such assistance.  Construing the facts in the light most favorable to Plaintiff, Defendants' failure to assist him is, at most, negligent conduct.  Neither negligence nor gross negligence will constitute deliberate indifference.  See id. at 835-36, & n.4.

United States District Court
For the Northern District of California

1       In sum, Defendants responded to Plaintiff's complaints about the sewage by taking two

2 remedial steps: they referred him to medical staff for a medical determination of whether he needed

3 assistance, and they suggested he take on a cellmate who would have also been responsible for

4 cleaning the cell.  At most, they were aware of the unsanitary conditions in the cell and negligently

5 failed to provide assistance.  Plaintiff has not shown that Defendants acted with criminal

6 recklessness in failing to provide assistance in cleaning his cell.  Therefore, the Court finds that

7 Plaintiff has failed to raise a triable issue of fact as to whether Defendants acted with deliberate

8 indifference under the subjective prong of Farmer.  511 U.S. at 834.

9       **C.**     **Causation**

10       Even if Plaintiff had met both the objective and subjective prongs of the Eighth Amendment

11 violation, liability may only be imposed on an individual defendant under § 1983 if Plaintiff can

12 show that Defendants proximately caused the deprivation of a federally protected right.  See Leer v.

13 Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th

14 Cir. 1981).

15       A person deprives another of a constitutional right within the meaning of § 1983 if he does

16 an affirmative act, participates in another's affirmative act or omits to perform an act which he is

17 legally required to do, that causes the deprivation of which the plaintiff complains.  See Leer, 844

18 F.2d at 633.  The inquiry into causation must be individualized and focus on the duties and

19 responsibilities of each individual defendant whose acts or omissions are alleged to have caused a

20 constitutional deprivation.  Id.  Sweeping conclusory allegations will not suffice; the plaintiff must

21 instead "set forth specific facts as to each individual defendant's" deprivation of protected rights.  Id.

22 at 634.

23       Although plaintiffs generally may recover damages for pain and suffering and mental and

24 emotional distress that results from constitutional violations, see Carey v. Piphus, 435 U.S. 247, 264

25 (1978); Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir. 1988), under the Prisoner Litigation

26 Reform Act prisoners may recover for mental or emotional injuries suffered while incarcerated only

27 if they first show that they suffered a physical injury.  See 42 U.S.C. § 1997e(e) ("No Federal civil

28 action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental

1    or emotional injury suffered while in custody without a prior showing of physical injury.").  The

2    qualifying physical injury must be more than de minimis.  See Oliver v. Keller, 289 F.3d 623, 627-

3    29 (9th Cir. 2002).  Physical symptoms that are not sufficiently distinct from a plaintiff's allegations

4    of emotional distress do not qualify as "a prior showing of physical injury."  See Davis v. District of

5    Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding that "somatic manifestations of emotional

6    distress" such as weight loss, appetite loss and insomnia, cannot establish physical injury under

7    § 1997e(e)); see also Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001) (holding that allegation of

8    increased risk of physical injury due to asbestos exposure was not "sufficiently separate from

9    [plaintiff's] claim for emotional and mental damages" to qualify as a prior physical injury under

10   § 1997e(e)).  Accordingly, Plaintiff's allegations of emotional and psychological distress due to the

11   squalid conditions are not cognizable unless there is a qualifying physical injury.  (Pl.'s Statement of

12   Factual Issues at 4.)

13        Accordingly, the Court looks for evidence of a physical injury that is more than de minimis.

14   See Oliver, 28 F.3d at 627-29; Davis, 158 F.3d at 1349; Herman, 238 F.3d 660; 1997e(e).  It further

15   looks for evidence that the actions of the individual Defendants were the cause of that harm.

16   Plaintiff has failed to show such an injury, much less that the individual Defendants, or the

17   unsanitary conditions, were the cause of any physical injury he suffered.  He states that he suffered

18   "severe sinus and respiratory problems."  (Pl.'s Decl. ¶ 10.)  He also avers that he contracted

19   pneumonia.  (Am. Compl. at 3, A5.)  But these are merely conclusory allegations and will not defeat

20   a summary judgment motion.  See Rodriguez, 265 F.3d at 902; see also Rivera, 331 F.3d at 1078;

21   see also Thornton, 425 F.3d at 1167.  Plaintiff has no documentation of more than the ailment of a

22   runny nose and allergic rhinitis.  (Mack Decl. ¶¶ 4-5.)  These are de minimis, and as such, do not

23   meet the threshold physical injury required to obtain relief.

24        Furthermore, even if Plaintiff suffered a physical injury that is more than de minimis, he

25   presents no evidence to support the contention that the unsanitary conditions caused his illness.  He

26   states that he had no history of respiratory or sinus illness before he was housed in the ASU during

27   the periods at issue.  (Pl.'s Decl. ¶ 10; Opp'n at 3.)  However, even assuming Plaintiff had no history

28   of those illnesses, such an allegation is insufficient to show causation.  At most, the fact that he

contracted these illnesses during the time periods when he was housed at the ASU shows that he became sick while being housed in unsanitary conditions. It does not show that the unsanitary conditions were the cause of his illnesses.

And even if Plaintiff could show that the unsanitary conditions caused him to contract serious physical illnesses, he would still need to show that it was the actions of each Defendant that caused his illnesses. Plaintiff alleges that Defendant O'Kelly refused to make out a report on the conditions of his cell. However, the record shows that Plaintiff filed a 602 appeal within the prison system, and thus, the prison administration was aware of his situation. Therefore, Defendant O'Kelly's failure to write the report did not cause Plaintiff to contract an illness; had Defendant O'Kelly written the report, the situation would have been the same.

Plaintiff alleges that Defendant Ippolito refused to speak with him about his situation. However, again, the prison officials' appeals decisions show that Plaintiff's situation was brought to the attention of prison staff, even if Plaintiff was not granted the requested meeting with Defendant Ippolito.

As to the other Defendants, Plaintiff alleges generally that they failed to remedy the situation, and that they had an obligation to do so under Title 15 of the California Code of Regulations, charging them with providing for the safe custody of inmates and for providing inmates with the means with which to "keep themselves and their living quarters clean." Cal. Code Regs. tit. 15, §§ 3060, 3271 (2009). Plaintiff also contends that by failing to accommodate his disability by cleaning his cell, Defendants were in violation of corrections regulations providing that no disabled inmate shall be excluded from enjoyment of the benefits and services offered at the prison and that reasonable accommodation shall be provided for disabled inmates to access the programs and services of the institution. Cal. Code Regs. tit. 15, § 3085. However, Plaintiff has not presented a cognizable physical injury that is more than de minimis. And even if he had, he presents no evidence that the unsanitary conditions were the cause of his injury. In the absence of these crucial links in the chain of causation, the Court need not reach the question of whether a general failure to remedy Plaintiff's situation in contravention of the regulations cited above could serve to establish proximate causation on the part of the remaining Defendants.

**United States District Court**
For the Northern District of California

1   Plaintiff has failed show that the actions of each Defendant proximately caused him a

2   cognizable physical injury; therefore, the Court finds that Defendants are entitled to summary

3   judgment as to Plaintiff's Eighth Amendment claim.

4       **D.**    <u>**Qualified Immunity**</u>

5   Defendants claim that summary judgment is also proper in this case because they are entitled

6   to qualified immunity from liability for civil damages.  The defense of qualified immunity protects

7   "government officials . . . from liability for civil damages insofar as their conduct does not violate

8   clearly established statutory or constitutional rights of which a reasonable person would have

9   known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The threshold question in qualified

10  immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the

11  facts alleged show the officer's conduct violated a constitutional right?"  <u>Saucier v. Katz</u>, 533 U.S.

12  194, 201 (2001).  A court considering a claim of qualified immunity must determine whether the

13  plaintiff has alleged the deprivation of an actual constitutional right and whether such right was

14  "clearly established."  <u>Pearson v. Callahan</u>, __ U.S. __, 129 S. Ct. 808, 818 (2009) (overruling the

15  sequence of the two-part test that required determination of a deprivation first and then whether such

16  right was clearly established, as required by <u>Saucier</u> and holding that a court may exercise its

17  discretion in deciding which prong to address first, in light of the particular circumstances of each

18  case).  The relevant, dispositive inquiry in determining whether a right is clearly established is

19  whether it would be clear to a reasonable officer that her/his conduct was unlawful in the situation

20  he confronted.  <u>Saucier</u>, 533 U.S. at 201-202.

21  Assuming arguendo that Plaintiff suffered a deprivation of constitutional proportion, the

22  Court next considers whether Defendants' conduct was clearly unlawful.  Plaintiff alleges that

23  Defendant O'Kelly refused to make out a report on the unsanitary conditions in his cell.  (Am.

24  Compl. at A6.)  Defendant O'Kelly maintains that the type of report Plaintiff requested was

25  improper.  Thus, Defendant O'Kelly suggested that Plaintiff fill out a different type of report,

26  namely, a 602 inmate appeal form.  (O'Kelly Decl. ¶ 4.)  It would not be clear to a reasonable officer

27  that it was unlawful for Defendant O'Kelly to point out to Plaintiff that the CDCR 7219 report was

28  not the appropriate report for a prisoner grievance, and that the 602 inmate appeal was.  The Court

United States District Court
For the Northern District of California

1   notes that, as mentioned above, Plaintiff eventually did fill out the appropriate 602 inmate appeal

2   form.

3          Plaintiff also alleges that Defendant Ippolito refused to speak with him at the time he

4   requested a meeting.  (Am. Compl. at A5-A6.)  Defendants aver that the proper procedure was for

5   Plaintiff to request such a meeting in writing.  (Ippolito Decl. ¶ 9.)  Absent such a written request, it

6   would not have been clear to a reasonable officer that Defendant Ippolito's refusal to speak with

7   Plaintiff at that time was unlawful.

8          As to the other Defendants, as mentioned above, Plaintiff alleges generally that their actions

9   and refusal to act violated regulations conferring on them a responsibility for the safe custody of

10  inmates and providing that "Institutions will provide the means for all inmates to keep themselves

11  and their living quarters clean."  Cal. Code Regs. tit. 15, §§ 3060, 3271 (2009); (Am. Compl. at A5.)

12  Plaintiff also cites corrections regulations providing that no disabled inmate shall be excluded from

13  enjoyment of benefits and services, and that reasonable accommodations shall be provided for

14  disabled inmates to access programs and services provided by the institution.  Cal. Code Regs. tit.

15  15, § 3085; (Pl.'s Resp. to Defs.' Reply at 3-4.)  Beyond these statutory obligations, Plaintiff does not

16  mention specific instances of action or inaction on the part of Defendants, other than the two

17  mentioned above.  While Plaintiff cites these regulations to suggest that Defendants had some

18  obligation to make sure that he was not living in unsanitary conditions due to his physical inability

19  to clean his cell, it would not have been clear to a reasonable officer that their failure to provide

20  assistance was unlawful.  Defendants allege that they brought Plaintiff's condition to the attention of

21  medical staff.  (Ippolito Decl. at ¶ 6.)  They further allege that they were informed that Plaintiff did

22  not need assistance in cleaning his cell.  (Id.)

23          In sum, no specific conduct by Defendants that has been brought to the Court's attention

24  would have been perceived by a reasonable officer as being clearly unlawful.  A reasonable officer

25  would not have found that Defendants' failure to address the unsanitary conditions in Plaintiff's cell

26  was unlawful, especially in light of the contentions that it would have been improper for Defendants

27  to enter Plaintiff's cell without being commanded to do so, that Defendants were following proper

28  procedure by bringing the situation to medical staff's attention, and that Plaintiff refused Defendants'

United States District Court
For the Northern District of California

1    offer to be housed with a cellmate who would clean the cell.  The situation Plaintiff faced was not so

2    clearly egregious as to have alerted a reasonable officer that he or she had an affirmative obligation

3    to rectify it in contravention of the normal protocols, namely, waiting for an assessment by medical

4    staff that a prisoner needed assistance and acting on the command of a sergeant after that.  <u>Cf.</u>

5    <u>McCord</u>, 927 F.2d at 846-48 (prisoner who had to choose between standing up all night or sleeping

6    on a sewage-soaked mattress lived in an environment "so unhygienic as to amount to a clear

7    violation of the Eighth Amendment," defeating the defendant's claim of immunity).

8         A § 1983 action is not a vehicle for a generic allegation that a prison system has failed to

9    meet its responsibilities to an inmate.  Even if the conditions of Plaintiff's cell violated Plaintiff's

10    Eighth Amendment rights, the Supreme Court has "rejected a reading of the Eighth Amendment that

11    would allow liability to be imposed on prison officials solely because of the presence of objectively

12    inhumane prison conditions."  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 299-302).

13         Accordingly, Defendants' motion for summary judgment is GRANTED based on:

14    (1) Plaintiff's failure to raise a triable issue of fact as to (a) whether Defendants acted with deliberate

15    indifference and (b) whether their actions proximately caused his injuries; and, in the alternative,

16    (2) the Court's finding that Defendants are entitled to qualified immunity from liability for civil

17    damages.

18                          **<u>CONCLUSION</u>**

19         In light of the foregoing, Defendants' motion for summary judgment (docket no. 29) is

20    GRANTED.  Plaintiff's supervisory liability claims against Defendants Nuckles, Boccella and Neotti

21    are DISMISSED without prejudice.  Plaintiff's federal claims stemming from the allegations in his

22    complaint have all been resolved; however, the Court's ruling does not foreclose Plaintiff from

23    proceeding with any related negligence or other state law claims in state court.

24         The Clerk of the Court shall enter judgment in favor of Defendants Powell, Ferry, Miller,

25    Bailey, Meyers, Ippolito, Reyes, Rincon, and O'Kelly.  The Clerk shall also terminate all pending

26    motions and close the file.

27         This Order terminates Docket no. 29.

28         IT IS SO ORDERED.              *Saundra B Armstrong*

DATED: September 30, 2009

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

TOMAS L MENEWEATHER,

        Plaintiff,

  v.

B POWELL et al,

        Defendant.
_____/

Case Number: CV07-04204 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 13, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Tomas Lopez Meneweather D35219
Salinas Valley State Prison
P.O. Box 1050
Soledad, CA 93960

Dated: October 13, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.07\Meneweather4204.grantMSJ.wpd